May it please the court, Paula J. Negley, appellant pro se. This is an appeal from summary judgment in a case involving Title VII and Equal Pay Act claims. I would like to briefly address four issues with the court and then request to reserve the remainder of my time for rebuttal. Okay. Counsel, was the reason for discharge here disclosure of a confidential report? It was called the unauthorized disclosure of information is what was put in the termination letter. Okay. I would first like to address if possible appellant's Equal Pay Act claim. Appellees have asserted that David Wolfe's higher salary was due to alleged additional duties and that appellant has not produced any triable issue of pretext. These assertions are not supported by the facts or the record. Wolfe turned down the labor relations negotiator position that he applied for because he wanted more money. Appellant was then informed that Wolfe would be put into a higher paying classification and worked out of class in order to pay Wolfe more money to do the same job that appellant was doing. Six days later on April 1st, 2008, appellant filed her first internal complaint. Wolfe's job title then began changing, first to special consultant and then to senior labor relations negotiator. Although Wolfe's job title changed, the higher salary that he had already been given did not. Do I have the facts right? Was Wolfe your boss? He ended up being, well, I'm getting, he ended up, I ended up becoming his subordinate employee, but at the time he was hired, I was not. So. So Wolfe's job title then began changing. And although Wolfe's job title changed, the higher salary he had been given did not. Senior manager Laura Franzella testified that when Ken Couch requested that Franzella create the senior labor relations negotiator position, that Couch could not identify one additional duty that would justify the new classification and the higher rate of pay. And admitted to Franzella that he really didn't have anything else for this person to do other than the existing duties already being performed in the labor relations negotiator position. I'm familiar in certain circumstances with people with the same job title receiving different amounts of money because of longer time in grade, prior experience. I mean, my law clerks do the same thing, but there are sometimes paid different amounts of money depending on the experience they're coming in with and so on. Do you have evidence that shows that either yes or no as to what happens within the responsibilities that you're describing, that they should be paid the same amount even if they are, even if they are doing the same functions? Well, in the case that you're describing, Your Honor, the job description and the job title exist first and then the higher salary comes after. In this case, Wolfe's higher salary came first, you know, and it was only after appellant filed her first internal complaint that the appellees asserted additional duties. But Wolfe's higher salary came first. The law says that an employer's purported additional duties must be scrutinized to determine if they are bona fide. And in Stiegel v. Citadel Broadcasting Company, this court recognized that such after-the-fact post hoc rationalizations by an employer can raise an inference of pretext sufficient to preclude summary judgment. Wolfe's higher salary came first and the changes to his job title and the assertion of additional duties only came after raised just such an inference of pretext, especially when viewed in the light of David Wolfe's direct participation in the conversation on May 16th with Ken Couch. Did Wolfe have more years experience as an attorney? I believe he had more years of experience as an attorney, but being an attorney was not a requirement of either job, either labor relations negotiator or the senior labor relations negotiator. It was not a job requirement. And an appellant was an attorney at the time that he was hired. I think it's also arguable that an appellant had more years of experience doing public sector labor relations. Most of his experience was in the private sector. He had more years of experience in both? I had more years of experience in the public sector labor relations. For many years, I was not a practicing attorney, but I was doing public sector labor relations. And he had more years as a practicing attorney. The inference of pretext when viewed in the light of David Wolfe's direct participation in the conversation of May 16th with Ken Couch, in which Ken Couch stated, we just need to keep provoking her. Not I, we. And not start provoking her, but keep provoking her. And who is Ken Couch making those statements to? David Wolfe. And who is responding to Ken Couch? David Wolfe. An appellant respectfully submits to this court that intentionally provoking your subordinate employee in order to try and cause a response, which her employer can then punish her for, is not and never will be a bona fide job duty. Accordingly --" What was the confidential report that they claimed that you disclosed without authorization? It was left in my office in a manila envelope anonymously. What's it all about? It was about a sexual harassment investigation in which a senior manager at the AOC was found to have committed sexual misconduct in the workplace for which he was receiving no discipline. The other document was the long memo to the person he had committed the sexual misconduct against, and she was told that the AOC had taken all necessary measures of correction. So he's told he's getting no discipline, and she's told that they've taken care of it. That's not your case, right? No, but it was with all the other documents. The issue is that it was, was it clear that it was a confidential document? I didn't even know if the document was real at the time, Your Honor. I had no idea who was leaving these documents. I didn't even know if the person was real, and that was in my deposition. Now, had it been real, and I guess it turned out to be, would it have been obvious to you that it was a confidential document? I believe that, generally speaking, employer investigations are confidential, but they can be released in certain circumstances. That's what I understand the law to be. Would it have been relevant to your lawsuit? I can see some at least tangential relevance to your lawsuit or your potential lawsuit, because part of your lawsuit is discrimination based on gender, and if we've got a situation in the office where there's sexual harassment going on and it's not being taken care of properly, that's of some relevance. I would also say that the relevance is the fact that they were left there at all, which is what you're saying to some degree, but also the subject matter. But then, Your Honor, the issue is also that, in particular, the Cimino memo, both of those documents, the one in Cimino memos, but the Cimino memo in particular was directly attenuated to Ken Couch. He admitted that that was... Hold on just a sec. Was Ken Couch the person accused of harassment in the confidential report? No. Okay. I misunderstood that then. Let's see. On this report, would you have had any reason to think it was fake or a concocted sample or forgery? I had a good reason to think that I was being set up to be fired. That answers a question different from what I asked. Was there any indication on it that would suggest whether it was, that there was, you said I didn't even know it was real. Was there any indication that it wasn't? I don't get any forgeries in my office. I didn't have any indication that it was real or that it had been issued. All I knew is these documents were being left in my office. And I would also say that the question of relevance is a question that should be left for a jury. The fact is they were left in my office against my will and without my permission and those documents were attenuated to Ken Couch. Hold on. I'm trying to find out something here. And you're answering a different question from what I'm trying to find out about. I know some things aren't real. For example, if I look at sample bar exam questions, I know that I'm not looking at the real bar exam and there's no harm in disclosing them. If one of my law clerks shows me some samples from a course that he took for the bar. So I don't, I wouldn't worry about disclosing them. On the other hand, when I get a memo from another judge, sure, some law clerk could have made it up as an April Fool's joke, but I have no particular reason to think so and I just assume it's a confidential memo from another judge. I'm trying to find out whether there was anything to indicate that this was other than a confidential report. Yes. The conversation on May 16, 2008 in which I directly heard Ken Couch instruct David Wolf to keep provoking me. And I had good reason to believe, Your Honor, at that point that those documents could have been fake. You know, in normal circumstances, I probably would have just turned them over to somebody in HR. But these are the very people that are engaging in this misconduct. This is the second time I have documents left in my office. Well, if they were trying to set you up. If I had come. Set you up with something real so that you would do something subject to discipline with it. I think there's a real inference in light of the conversation on May 16th and Ken Couch's intention to fire me and to keep provoking me that there is a reasonable inference that if I had come forward with those documents, that there was a very good possibility I would have been fired on the spot just for having them. I would have been accused of something I hadn't done, and I would have been fired on the spot. There's a reasonable inference. Why wouldn't you just turn them into HR then and say these must have been looked at? Because these were the very people that were doing it. It was the HR director, Ernesto Fuentes, his assistant, his senior manager, Ken Couch, and David Wolf. Go to the very people who were doing this. I had already gone to the chief justice and Bill Vickery not once but twice. This all happened after I filed my second internal complaint. They're doing no investigation at all. Well, it seems to me at least a possible inference of finding these documents on your desk that there's somebody in the, I don't know whether to call it the department, but in the works section that's sympathetic with you and trying to give you evidence that, you know what, you're not alone here. These people are behaving badly. I mean, that's a possible inference. Instead of setting you up, they're trying to help you. Except that Ken Couch admitted that the Cimino memo was his own version of that document, Your Honor, and no one else had access to it but him, specifically Appellant. It was kept on his computer, on his computer drive under his password, and no one else had access to it. He stated that the only person he ever sent a copy of that Cimino memo to was to Kim Davis, and he never even interviewed her. Yeah, but I'm trying to figure out at the time you got it on your desk, I mean, what you're trying to figure out. Maybe they were trying to set you up. Maybe somebody was trying to help you. I think it's ambiguous. I mean, all you have is this document that's not actually very flattering to your superiors. I agree, but you have to remember that was not the only document in the envelope. There was a document in there containing the AOC termination checklist, documents pertaining to how to terminate an AOC employee. Do you happen to know, have other people disclosed confidential documents such as these and not been terminated? I don't have any knowledge as to anybody in the HR division that ever had documents left in their office and turned them over, Your Honor. What evidence do we have that at the time you were terminated, that the people who, well, maybe I'll go back earlier than that. There's some actions that are taken against you, if your evidence is to be believed, that were adverse. I'm not sure I want to call them adverse employment actions in the ordinary sense, but they might have been designed to punish, deter, or discourage you from pursuing your, what you view as your claims, and, of course, you're terminated. I'm trying to figure out when these actions leading up to and then including the termination take place, who among the actors that you've made as defendants or saying are acting badly knew about your internal complaints? Because I gather you made two internal complaints. Yes. Who knew about those internal complaints, and what evidence do we have that they knew? The Chief Justice, Ron George, Bill Vickery. There's also evidence that Ken Couch knew because it was sent directly to him. So tell me more about that evidence. Can you say evidence that it was sent directly to him? The first internal complaint was submitted directly to the Chief Justice and Bill Vickery, and it was also submitted directly to Ken Couch by my attorney at the time, Patrick Cooney. And you say submitted. In what form? It was faxed to him, and it was also mailed to the AOC, and it was personally, the second one was personally served and also mailed. Okay. So we know, at least we have pretty strong evidence, that he received the first complaint. Second complaint? Yes. Same thing? The second complaint, I personally served on the AOC. I mailed it. I dropped a copy off at the Chief Justice's office. I dropped a copy off at the executive office with Bill Vickery, and I dropped a copy off with Ken Couch's secretary, Venetta Brown, who confirmed to me that it was given to him. And how many of the actions of which you are complaining, obviously the termination comes after, but how many of the actions of which you are complaining take place after you're filing these complaints? The first one would have been when I was required to charge sick leave up at the Burbank Labor Relations Academy after I had been ordered to work on April 17th. The AOC disputes that, but the cell phone record clearly evidences that I was taking work-related calls, and Scott Gardner admitted that he told me to turn on my work cell phone and leave it on. He claims to check. Is this the time when you were at the conference? Yes. And you said you couldn't go because you had a doctor's appointment? Yes. I was sick. I actually ended up being hospitalized, and I was ordered to work. So there was that. Then there was the events of May 16th, where I was interrogated by David Wolf for two hours for something that had happened a year, more than a year earlier, involving the Kern Court, and even though Scott Gardner sat there and told David Wolf that I was telling the truth, he kept interrogating me in very accusatory tone. Later that day, I heard the conversation between David Wolf and Ken Couch, in which Ken Couch stated that he intended to fire me, that to keep provoking me, that I had no rights, that eventually I wouldn't be able to handle it. Yes. Now this, of course, is summary judgment, and on summary judgment, we take all evidence in favor of the person resisting summary judgment, so we take that as true. Nonetheless, I'd be interested to know whether they have a different version of that conversation or deny that that conversation took place. Well, I believe in Margaret Murray's report, Ken Couch stated he was talking about somebody else, but in their response to appellant's appeal, the appellees are now claiming that Ken Couch was just angry about Kern, and apparently he got over it. And I submit to you by stating eventually she won't be able to handle it. You know, the circumstances after that with being denied overnight travel, with the incessant e-mails, the very harassing e-mails, with the various innocent being charged, leave time to go to a mediation that the AOC requested. Okay. I've got one problem that's kind of a technical problem, and that is there's a fair amount of evidence in the record in one sense. Only some of it was brought to the attention of the district judge. Some of it was in my declaration. Some of it were also assertions that were in appellee's declaration, so I did respond to those. But I would argue to this Court, Your Honor, that there were enough inferences, you know, to support allowing this to go to a jury and have a jury decide. You know, there was enough. The district court ignored appellant's direct evidence of retaliation. The district court completely ignored. In the entire discussion, you don't find a single word about that discussion that happened on May 16th or Wolf's involvement in it. Okay. You don't find anything in there about the corroborating testimony of Luria. Tell me as though you had made factual allegations in your blue brief that were not presented to the district court in the opposition to motion for summary judgment. I believe that there were incidences of other forms of retaliation that were not included in appellant's declaration, but were included in the declarations of the appellees. I would also submit that there were statements that were contained in the opposition to summary judgment that were not contained in appellant's declaration because she could not speak to them. For example, the testimony of Luria Franzella regarding the corroboration of the statements made to her by Ken Couch and Jeannie Coyle that appellant was going to have to take a fall, that appellant was going to be gone, and the gleeful demeanor of Couch and Coyle in making those statements. It completely disappeared from the district court's decision. It's like it never even existed, and it was right there in our opposition. Okay. Let's do this. We've taken you well over your ten minutes. As soon as the light goes on, we're counting up. Let's hear from the other side, and we'll give you a chance to respond. I would just like to mention one thing, Your Honor, that if the motion to strike is granted, I believe the rules provide for appellant rewriting or resubmitting her briefs with the redacted information, and as the appellees gave no notice, no objections in the district court to appellant's deposition, didn't file a single objection, and now want it stricken that I be allowed to do that. Let's hear from the other side, and we'll give you a chance to respond. Good morning, Your Honors. May it please the Court, my name is Ian Fellerman, and I represent the appellees of the Judicial Council of California and the Administrative Office of the Courts. As Your Honors recognize, the appellant is relying on evidence and arguments that were never presented to Judge Patel below and should not be considered here. They're detailed in the motion to strike, and I won't belabor the point. Now, is the argument that they were not in the record in the district court, or that they were not brought to the attention of the district court? Both, Your Honor. Both they were not presented to the court, they're not cited anywhere in the opposition papers to the motion for summary judgment, also, and that they were not in the record. And most specifically, with respect to the plaintiff's deposition. But isn't there a rule that requires that the full deposition be filed in the district court? Yes, Your Honor. And in the Bank of America case, the court ruled that simply filing a deposition, the entire deposition transcripts with the court, does not make it part of the record. The district court is not required to comb through plaintiff's 600 pages of deposition testimony to try to find a triable issue. Well, you see, that's what I'm after. There is a basic principle that on summary judgment, if you want to rely on evidence, you've got to point to it. Exactly. And they didn't do that. But the transcripts were filed with, the full transcripts were filed with the district court. Is that correct? They were, Your Honor. But again, in the Bank of America case, the court indicated that does not make them part of the record. But the key and salient point is none of these additional new evidence and arguments were brought to the attention of Judge Patel when she issued her order. That was what she relied on, was what was presented to her, and they shouldn't be allowed to enlarge the record at this juncture. Counsel, on the matter of what could be considered on summary judgment, I don't know what the local rules are in that district. In both the State and Federal courts, when I was a district judge and when I was in practice, depositions were not filed in court at all unless somebody attached them to a motion. Typically, they would be attached as the supporting papers either to a motion for summary judgment or an opposition to a motion for summary judgment or occasionally a reply to opposition for summary judgment. And if they were lengthy, then under Carman and I think it's Bank of America, the movement or respondent had to point to the sections that bore on what the judge had to decide. Under Carman, we held that if they were in the record but were not attached to or pointed at by the motion or opposition, they could be disregarded so that a judge would not have to search through a very lengthy record to try to come up with some sort of evidence and argument in favor of a respondent. And I want to know where these depositions were and what pointing was done, what evidence the judge was supposed to consider under those two cases on the summary judgment. The Court was supposed to consider the specific evidence that was cited by the appellant in the opposition to the motion for summary judgment. And then the appellant's comment. With respect to the depositions, were they attached to the moving papers or the opposing papers? No, Your Honor. They were separately filed pursuant to the Northern District's rule. They were just separately lodged with the Court. Is there a rule there where you can just file a bare deposition, no need to attach it to a motion? Exactly. The rule is if you cite to any part of a deposition in a motion, you have to lodge the entire deposition transcript. We cited twice. You said lodged just then. That's different from filed. It's a filing. But I would submit, Your Honor, that the difference between lodging and filing is a semantic issue in Bank America. They were submitted to the Court. Here they were submitted to the Court. The only reason they were lodged or filed, Your Honor, is because we cited to the deposition in our motion. It's not always semantic. I mean, often a nonpermitted brief is lodged in our Court and the clerk stamps it received. We don't respond to the contentions in it unless we allow filing. Right. You're right, Your Honor. And the appellant never cited any portion of her deposition transcript in their opposition to the summary judgment motion. Never, not one cite. The only reason that those depositions were submitted is because we cited to various sections, and under the rule, then we had to submit the entire deposition transcript. Now, she said in her argument a moment ago that some facts that would establish a genuine issue of material fact, though not in her opposition and not referred to her in her opposition, were in the moving papers and referred to in the moving papers. Can you respond to that? We dispute that, Your Honor. And we went through in our separate statement of undisputed facts all of the facts that justify summary judgment that Judge Patel did not identify anything in our papers that set forth a triable issue, and they haven't identified anything in our papers that set forth a triable issue. And even if the Court were to consider all of the new evidence and arguments that are being submitted, Judge Patel's judgment should still be affirmed. On the equal pay claim, it should be affirmed for two separate and independent reasons. I'm more concerned with the retaliation claim. Then I'll address that directly, Your Honor. With respect to the retaliatory discharge claim, Judge Patel's judgment on that should also be affirmed for two separate and independent reasons. First, appellant failed to set forth a prima facie case because she did not show any causal connection between her April 2009 termination and her complaints of discrimination that were filed a year earlier. Your time period does not set forth sufficient temporal proximity to establish a causal connection. Have you read our opinion in Kozolter? Yes, Your Honor. That's the answer to that point? Your Honor, as a separate and independent reason for affirming the judgment on the claim is that appellant did not set forth specific and substantial evidence of pretext reflecting that the AOC's reason for terminating her, namely the disclosure of documents, was a pretext that the real reason was her filing of those complaints a year earlier. Let me ask you this. Are the following things in the record, as you conceive the record that we can look at, that Mr. Couch knew about the complaints? Yes, Your Honor. That the appellant overheard a conversation that she has described to us today and we've seen in the record. That was not presented to Judge Patel below. She did not and Judge Patel never heard a word about that conversation? That was not presented to Judge Patel below. Okay. I guess I can go. Another one about how we're going to set her up. The setup, there's no evidence of any setup. The argument is that these documents were put on her desk as a setup. I'm not talking about setup. No. I'm talking about the conversation that says if we continue to provoke her pretty soon, she's going to let us fire her. Right. That was not submitted as part of the underlying record. So Judge Patel knew nothing about that. And let me address. I want to make sure that you tell me that. Judge Patel knew nothing about that. That was not presented. I'm going to ask you a different question. Judge Patel knew nothing about that. Is that true? I don't believe so, Your Honor. And why don't you believe so? I don't believe it was presented as part of the underlying record. But let me address that comment, the fire and provoke, even if you consider that conversation. The context of that comment is it was made in connection, allegedly made in connection with the Kearns adoption of their health care plan. That was back in May of 2008, a year before termination. At the time of Kearns adoption of the health care plan, the allegation is that Mr. Couch stated that she needs to take the fall for this, that Mr. Couch and Ms. Cahill stated the plaintiff needs to take the fall for the Kearns adoption of the health care plan and we need to fire her and provoke her for that. That was the context of it is it all allegedly dealt with Kearns adoption of the health care plan in May 2008. There's been no nexus shown that any of those comments had anything to do with the subsequent termination a year later. And was that explanation of we need her to take the fall because of the Kearns plan advanced to Judge Patel? I don't believe so, Your Honor, but I'm not positive. Now, why are you not positive when you're so positive that Judge Patel didn't even know about the conversation? I don't believe it was part of the record presented to Judge Patel, Your Honor. But, again, even if it had been presented or even if you consider that evidence, it does not relate to the termination of her employment. In her papers now, she... Let me ask you a different question. We also heard about she says she's sick and she's required to keep her cell phone on with her and on at all times during the day. Is that in front of Judge Patel? No, Your Honor. None of that evidence was submitted to Judge Patel below. Those are all new allegations along with a number of other things. What I want to emphasize here is in Appellant's brief, Your Honor, Appellant acknowledges that she was terminated for disclosing these documents, but she says she was entitled to disclose them and that they somehow now that is protected activity. But under FEHA, disclosing documents is not protected activity. But, of course, you know employment law as well as I do. I mean, it's a classic case I had in law school. There's a perfectly miserable employee. He comes to work late. He's drunk most of the time and they tolerate him. Then he starts doing labor organizing and they fire him. And they say, we fired you because you're a perfectly miserable employee. You come late and you're drunk. And the answer is, yeah, but you're not allowed to fire him because he's doing labor organizing and you only fired him after he started doing labor organizing. What would have been a perfectly good reason for firing him is not in this circumstance an appropriate reason. And I understand and I'm perfectly willing to say that disclosing confidential documents is a perfectly good reason for firing someone. The question, however, is whether it's a pretext. You're correct, Your Honor. And there's no – Appellant did not produce substantial and specific evidence that it was a pretext. There's no evidence in the record that she was terminated for these year-old complaints. There is no evidence that the termination happened because a year earlier she complained of discrimination. The uncontroverted evidence is that she was terminated because she disclosed these documents. And now she's saying, well, I was justified in disclosing these documents. Well, whether she felt she was justified is not relevant. The only relevant issue is, is that why she was terminated or not? And did she come up with specific and substantial evidence that this was a false reason and the real reason was something that happened a year earlier? And she has not produced any such substantial and specific evidence, as Judge Patel recognized, Your Honor, in issuing her summary judgment order. You know, I think Judge Patel missed the Cozalter case. Do you agree? Well, I believe that there are a number of different cases that address the question of temporal proximity, Your Honor, and that there are many cases that say 8 months, 10 months, 12 months is not sufficient temporal proximity. And with respect to pretexts – Are you telling me Cozalter is not good law? No, I'm not indicating that at all, Your Honor. I'm indicating that there are decisions across the board on this. But that does not do – She did not cite Cozalter. Is that correct? Correct, Your Honor. And she cites some unpublished opinions that just say such-and-such a time is too long? She also cited published opinions as well, Your Honor, that stated that 10 months, 12 months is too long. But that only goes to the prima facie case. It doesn't go to the issue of pretext. And the plaintiff did not submit such evidence. Well, of course it does go to the issue of pretext. It goes to what's in the person's mind when they take the adverse employment action, whether it's firing or something else, how long has it been. And this is just ordinary common sense that's in Cozalter that says, you know, if it's short, maybe it's not in retaliation. If it's long, maybe it's not in retaliation. You've got to consider the context. And some people will wait a long time. You know, revenge is a dish best eaten cold. I mean, there are lots of reasons why people wait. You're correct, Your Honor. But under California's established FIHA law, Ortega and McRae and Loggins, temporal proximity alone does not establish pretext. So even if you were to indicate How does temporal distance alone protect? Correct, Your Honor. But in this case, we have a 12-month time elapse. And there is Let's assume that the 12 months doesn't do you any good. Twelve months ago, they say we'd really like to get rid of this woman. They don't. And then after she releases or discloses the confidential material, they fire her. Let's assume that the entire 12 months they've been looking for an excuse to fire her. What then? What would be the argument with respect to pretext? That there's no evidence that they were looking for an excuse to fire her. Let's suppose that hypothetically they had gotten on the stand and said, Yep, she was nothing but trouble. We were looking for an excuse to fire her. Let's suppose hypothetically that it happened. Would the firing then be pretextual when she disclosed the confidential documents and got fired? Not if the termination was done because she disclosed the documents. If she was terminated because she disclosed the documents, that's a justifiable termination. Was she terminated because she disclosed the documents? That's what the undisputed evidence in the record before Judge Mattel was. Is there evidence that other people Disclosing confidential documents is not a protected activity like labor organizing, right? Correct, Your Honor. Under FIHA Were there other employees shown in the record to have disclosed confidential documents and not been fired? Never. No such evidence was in the record. And again, disclosing documents is not protected activity under FIHA. Protected activity under FIHA is complaining of discrimination or refusing to discriminate. The protected activity in this case is the two complaints that she files. Correct. But she tries to change that in the appellate brief to say the protected activity was the actual disclosure. But I agree with you, Your Honor. I'm not on that point. The question is whether it seems to me the protected activity is filing the complaints, which is why I'm interested in knowing whether Mr. Couch knew about the complaints, and apparently he did. Yes, Your Honor, he did. But his mere knowledge by itself does not create pretext. It's not evidence that it was pretextual. I understand that, too. Yes. Thank you. Thank you very much, Your Honors. Would you like to hear from me with respect to any of the other claims? Not for me, thank you. Thank you, Your Honor. Thank you. Would you like two minutes? Okay. Helen's deposition was filed, not lodged in the district court, and they didn't just use it for deposition testimony. They used well over 50 exhibits from her deposition. Let me ask you a question, though. Your adversary has just said that Judge Patel never heard about, never knew about it. She was not alerted to the evidence in the filing as to this conversation. That is completely wrong. I'm sitting right here looking at the plaintiff's opposition to motion for summary judgment and the declaration of Paula Negley, and it was in both of them. It was in our briefs. It was in my declaration. It is a completely false statement. So can you point me to them? I've got the ERs right here. If you have it. I can find it if you can't put your hand on it immediately. But if you can put your hand on it immediately, that would be useful. I don't. I can do that. Could you give me just a moment, please? Sure. And if you can't find it immediately, don't worry. You know, I've got law clerks. The opposition to summary judgment, EOR 1353, 16 through 23. No, no. Slow down. I'm just going to write it down. It turns out I didn't bring it with me, but I'll go downstairs and look. Say again. ER. EOR 1353. Thirteen fifty-three. 16 through 23. Line 16 through 23? Yes. EOR 1354, 05 through 22. Hang on. I'm slow. Okay. 1354 lines. What is it? No. Say again. EOR 1354, 05 through 22. Thirteen fifty-nine. Zero three through 24. And in my declaration, it's 1363, 21. Okay. This is your declaration. Thirteen. Thirteen sixty-three, 21. Line 21. Through 1364, 02. It was also raised at oral argument. 1608, 14 through 22. This is in the transcript. And 1610, 05 through 10. 1605? Sorry. Sorry. 1608, 14 through 22. Yes. 1610 through 05 through line 10. And these were before the judge in the motion and opposition to summary judgment? Yes. And his attention was directed to these? Yes. Her attention. And what do they establish? It establishes the conversation that appellant overheard on May 16th between Ken Couch and David Wolfe, in which Couch stated his intention to fire appellant, to keep provoking her, that eventually she wouldn't be able to handle it, that she had no rights, and that he was going to fire her. Tell me, I don't understand how you get provoked to disclose confidential documents. I can understand how you can get provoked to say sharp words or to lose your temper with somebody or to be rude or to use what they consider vulgar language or something like that. People can irritate you to the point where you do something that you're a little embarrassed about later. I don't understand how you get provoked to release confidential documents. I suppose somebody could entrap you if you don't release these confidential documents. I'm going to say you did and blackmail you in all sorts of elaborate fantasies. It didn't happen. But I don't understand how provocation bears on it. Your Honor, I would first of all respond that the appellees admitted before Judge Patel that an appellant had a right to turn over all of the documents that were left in the manila envelopes in her office, except they said only the Wong and Cimino memos. Those were the only ones that they excluded. Are you saying that you did not disclose confidential documents? Okay. I did not know whether they were confidential or not when they were left in my office. All I knew is that these documents were being left. On personnel matters, all investigations were confidential until they were made public because of a lawsuit or something like that. Okay. Well, we were in litigation when they were turned over, and appellees stated that as to all the other documents that were left in the appellant's office, they could be turned over. The only ones they excluded, and they stated this right in the court, was the Wong and Cimino memos. And then it turns out that the ---- Who did you turn them over to, incidentally? Who did you disclose them to? I turned them over to my attorney, under attorney-client privilege, that was then turned over to their attorney, Mr. Fellerman, under attorney-client privilege. And the appellees then publicly published those documents. They gave the documents to your attorney. Yes. And the appellees then publicly published those documents and made them a matter of public record without even redacting the employees' names, which does not speak to those documents being confidential. When you say they published them, in what form did they publish the documents? They published them in the district court in their motion for summary judgment, and they didn't put any kind of a protective order on it. Not under seal? Nope. And with the employees' names not redacted. That does not speak to confidentiality. They made them a matter of public record. Had you already called those disclosures? I had already complied with the initial disclosure by turning them over to my attorney, who then turned them over to their attorney, Mr. Fellerman. I never publicly disclosed those documents. And I turned over all of the documents that were left. Your filings in court had not disclosed the names of the employees? No. No. No. Okay. I got it. I got it at the first no. Okay. Well, you're over time again. Why don't we give you just a paragraph to sum up? This court has recognized that a plaintiff's right to trial should be zealously guarded. Appellant has more than met her burden in this case. And I would respectfully ask that this court honor the tenets of summary judgment and reverse the district court decision and rename this case for trial. And I thank you for your time this morning and for considering my appeal. Thank both sides for their arguments. The case of Negley v. Judicial Council of California is now submitted for decision.
judges: Hug, Kleinfeld, Fletcher